**In re SARAH'S TENT, LLC, Debtor.**

**No. 08–17075–BKC–AJC.**

United States Bankruptcy Court,
S.D. Florida,
Miami Division.

Nov. 7, 2008.

Stan L. Riskin, Esq., Plantation, FL, Joel L. Tabas, Scott N. Brown, Esq., Miami, FL, for Debtors.

David Samole, Esq., Coral Gables, FL, for Creditor Committee.

Mark D. Kleiner, Perman, Yevoli & Albright, P.L., Ft. Lauderdale, FL, for buying group.

Eric N. Assouline, Assouline & Berlowe, P.A., Dania Beach, FL, for Waterways Plaza, LLC.

### ORDER AUTHORIZING (1) SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES, (2) ASSUMPTION AND ASSIGNMENT OF LEASE, AND (3) OTHER RELATED RELIEF

A. JAY CRISTOL, Chief Judge Emeritus.

**THIS CAUSE** having come before the Court on November 7, 2008 at 1:45 p.m., upon this Court's Order (1) Granting Joel L. Tabas, Trustee's *Ore Tenus* Motion to Shorten Notice Period for Hearing on Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, Claims and Encumbrances and (2) Setting Sale Hearing (D.E.# 94)(the "Order"), and the Court, having reviewed the Trustee's Notice of Filing of Summary of Key Terms of Proposed Sale (D.E.# 97)(the "Key Terms Summary"), having considered the record of the November 4, 2008 Status Conference at which the terms of the Proposed Sale (defined below) were announced, having noted the representation of Trustee's counsel that Joseph Aviv, Orian Azulay, and David Mizrachi and/or their assigns (collectively, the "Prospective Buyer") has tendered a $75,000.00 non-refundable deposit to the Chapter 11 Trustee, Joel L. Tabas (the "Trustee"), having noted the representation of Trustee's counsel that the Trustee has disseminated the Key Terms Summary and Order to all parties that had previously expressed an interest in acquiring the Estate's right, title and interest in the Debtor's assets, having noted the representation of Trustee's counsel that no other parties made an offer to purchase the Estate's right title and interest in the Debtor's assets, or delivered a bid deposit as required by the Order, having been advised by Trustee's counsel that the sale proceeds will not generate sufficient funds to pay all Chapter 11 administrative expenses (including but not limited to post-petition trade vendors, post-petition wages, and professional fees), but having. determined that the relief authorized herein is in the best interests of this Bankruptcy Estate and all creditors given the unique circumstances of this case, having heard argument of counsel, and for the reasons set forth on the record,

**IT IS FOUND AND DETERMINED THAT:**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (N) and (O). The statutory predicates for the relief granted herein are sections 105 and 363 of the Bankruptcy Code, and Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 2002, 6004, and 9019.

3. Given the unique circumstances of this case, proper, timely, adequate, and sufficient notice of the relief authorized by this order (the "Sale Order") and the transaction contemplated in the Key Terms Summary has been provided in accordance with Section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004.

4. Given the unique circumstances of this case, a reasonable opportunity to object or to be heard by all parties in interest with respect to the relief authorized by this Sale Order and the transaction con-

templated in the Key Terms Summary has been afforded to all interested persons and entities, and the Court has noted that no request to be heard or objection was filed or made during the hearing from which this Sale Order emanated (the "Sale Hearing").

5. The relief authorized by this Sale Order and the transaction contemplated in the Key Terms Summary reflect the exercise of the Trustee's sound business judgment and constitute a proper exercise of the Trustees's fiduciary duties.

6. The relief authorized by this Sale Order and the transaction contemplated in the Key Terms Summary is in the best interests of this Bankruptcy Estate. Good and sufficient business justification for consummating the Proposed Sale pursuant to Section 363(b) of the Bankruptcy Code has been established in that, among other things: the sale process conducted by the Trustee as required by Section 363 of the Bankruptcy Code has been fair, open and reasonable, and has permitted the Prospective Buyer's offer to be tested against other offers.

7. The relief authorized by this Sale Order (the "Proposed Sale") was proposed, negotiated, and entered into by the parties without collusion, in good faith, and from arm's length bargaining positions. The successful bidder is a purchaser in good faith of the Estate's right, title and interest in the Assets (defined below) under Section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby. Neither the Trustee nor the successful bidder have engaged in any conduct that would cause or perm it the relief authorized by this Sale Order and the transaction contemplated in the Key Terms Summary to be avoided under Section 363(n) of the Bankruptcy Code.

*Background*

8. From the May 29, 2008 (the "Petition Date") through September 24, 2008, the Debtor, a kosher grocery store, operated as a Debtor–in–Possession.

9. On September 24, 2008, pursuant to 11 U.S.C. § 1104, this Court entered its Order Directing Appointment of Chapter 11 Trustee, and Setting Status Conference (D.E.# 65)(the "Order Appointing Trustee").

10. On September 25, 2008, Joel L. Tabas was appointed as Chapter 11 Trustee (*See* D.E. # 61).

11. Neither the Trustee, nor his agents, employees or professionals, have actual first-hand knowledge of the Debtor's operations or finances prior to September 25, 2008.

12. All information and documentation provided by the Trustee to the Prospective Buyer in connection with the Prospective Buyer's due diligence is based upon information generated and kept by the Debtor. Accordingly, the Trustee has made no representations or warranties with respect to any information provided to the Prospective Buyer, and the Prospective Buyer has had a reasonable opportunity to conduct independent due diligence.

*The Debtor's Assets and the Purported Secured Creditors*

13. The Debtor's Schedule "B" (D.E.# 8) lists the following assets: (i) money in registers—$200.00 (the "Cash"), (ii) bank of america—$2,000.00 (the "Scheduled BOA Account"), (iii) deposit with landlord—$80,000.00 (the "Landlord Deposit") [1], (iv) business equipment used in store—$10,000.00 (the "Equipment"), (v)

1. Landlord's counsel has represented that the Landlord is in possession of $51,199.12, as

the remainder of the Landlord Security Deposit was returned to the Debtor.

estimated inventory at cost—$700,000.00 (the "Inventory").

14. The Prospective Buyer have been given a reasonable opportunity to examine the Equipment and the Inventory. Notwithstanding the scheduled value of the Inventory, the Trustee has advised the Prospective Buyer that, upon information and belief, the actual value of the Inventory as of November 7, 2008 is approximately $100,000.00.

15. Other than the Lease (defined below), the Debtor's Schedule "G" (D.E.# 8) lists, no unexpired leases or executory contracts. The Debtor's principal, Haim Altit, has represented and warranted to the Trustee that there are no undisclosed leases or executory contracts.

16. There are four (4) UCC–1's of record that purport to encumber the Debtor's assets, as follows: (i) Cash Advance Corporation ("CAC"), File No. 200603435007, filed on August 16, 2006 (the "CAC UCC"), (ii) Venture Bank ("VB"), File No. 200604433326, filed on December 22, 2006 (the "VB UCC"), (iii) IGT Media. Holdings Inc. ("IGT"), File No. 200706164464, filed on July 31, 2007 (the "IGT UCC"), (iv) Sound Garden ("SG"), File No. 200706915206, filed on November 1, 2007 (the "SG UCC").

17. The Debtor's Amended Schedule "D" (D.E.# 31) lists five (5) secured creditors as follows: (i) CAC—$50,000.00, scheduled as "disputed" (ii) IGT—$50,000.00, scheduled as "disputed" (iii) SG—$5,000.00, scheduled as "disputed" (iv) VB—$128,000.00, and (v) Yasef Beraha ("YB")—$100,000.00, scheduled as "disputed" (collectively, the "Scheduled Secured Creditors") [2].

18. The Debtor's principal has represented and warranted to the Trustee that there are no other secured creditors or parties which may (i) claim a lien on, or security interest in, the Debtor's assets, (ii) claim an interest in the sale proceeds, or (iii) have a secured claim against the Bankruptcy Estate, other than the Scheduled Secured Creditors.

19. The claims bar date in this case was September 30, 2008 (the "Claims Bar Date").

20. On June 27, 2008, YB filed a secured proof of claim in the amount of $127,500.00, which is reflected on the Claims Register as Claim No. 9 (the "YB POC").

21. On September 15, 2008, YB filed his Notice of Withdrawal (D.E.# 54) of the YB POC, together with an amended proof of claim asserting a general unsecured claim in the amount of $127,500.00. Accordingly, the Court finds that YB is not a secured creditor of the Debtor or the Bankruptcy Estate.

22. All of the Scheduled Secured Creditors are reflected on the Court's mailing matrix, and all of the Scheduled Secured Creditors have been served with all pleadings since Amended Schedule "D" was filed by the Debtor on August 5, 2008.

23. A review of the Certificate of Service of the Debtor's Motion for Use of Cash Collateral and Post Petition Financing (D.E.# 30), reflects that said motion was served on all of the Scheduled Secured Creditors.

24. CAC, VB, IGT, and SG have not filed proofs of claim or otherwise appeared in this proceeding.

25. The only secured claim that has been filed in this case is that of Ford Motor Credit Company, LLC ("FMCC"), in the amount of $3,193.26, which is re-

---

**2.** The Scheduled Secured Creditors, excluding YB, shall sometimes be collectively referred to as the "Remaining Secured Creditors."

flected on the Claims Register as Claim No. 16.

26. The Trustee's counsel has represented that CAC has agreed to accept the sum of $50,000.00 from the sale proceeds, in full and final satisfaction of any and all liens it may possess against the Debtor's assets, including but not limited to the lien subject of the CAC UCC, and any and all claims it may possess against the Bankruptcy Estate.

27. The Trustee's counsel has represented that VB has agreed to accept the sum of $47,500.00 from the sale proceeds, in full and final satisfaction of any and all liens it may possess against the Debtor's assets, including but not limited to the lien subject of the VB UCC, and any and all claims it may possess against the Bankruptcy Estate.

28. The Trustee's counsel has represented that IGT has agreed to accept the sum of $14,732.20 from the sale proceeds, in full and final satisfaction of any and all liens it may possess against the Debtor's assets, including but not limited to the lien subject of the IGT UCC, and any and all claims it may possess against the Bankruptcy Estate.

29. Because (i) SG's scheduled claim is listed as "disputed," and (ii) SG has failed to file a proof of claim prior to the Claims Bar Date despite having received notice as set forth above, the Court finds that SG has waived (i) any lien rights against the Debtor's assets, (ii)any claim against the sale proceeds, and (iii) any secured claim against the Bankruptcy Estate.

30. With the exception of CAC, VB, and IGT, the Court finds that there are no parties which (i) hold a properly perfected and valid lien on the Debtor's assets, (ii) may claim an interest in the sale proceeds, or (iii) may possess a secured claim against the Bankruptcy Estate.

### The Vehicle

31. On August 5, 2008, FMCC filed its Motion for Adequate Protection (the "Ford Motion")(D.E.# 33), seeking entry of an order compelling the Debtor to make adequate protection payments with respect to a 2003 Ford E250, VIN 1FTNE24W53HB49964 (the "Vehicle"). The Ford Motion represents that the net payoff on the contract as of May 29, 2008 was $3,193.26.

32. On September24, 2008, this Court entered its Order Granting Ford Motor Credit Company, LLC's Motion for Adequate Protection (D.E.# 60).

### The Lease

33. On or about August 26, 2006, the Debtor, as tenant, and Waterways Plaza, LLC, as landlord (the "Landlord"), entered into a Lease for real property located at 3565 N.E. 207 Street, Units A–1, A–7, and A–14, Aventura, Florida 33180 (the "Premises"). A true and correct copy of the Lease has been filed as Exhibit "A" to Creditor Waterways Plaza, LLC's Motion for Order Directing Payment of Administrative Rent (D.E.# 48).

34. On October 14, 2008, this Court entered its Amended Order Granting Expedited Motion to. Extend Time to Assume or Reject Lease (D.E.# 84), extending the deadline for the Trustee to assume or reject the Lease to December 26, 2008.

35. On September 24, 2008, the Landlord filed a proof of claim in the amount of $65,554.44, which is reflected on the Claims Register as Claim No. 15, for unpaid pre-petition rent.

36. As detailed in Exhibit "A" to this Court's Agreed Order on Creditor Waterways Plaza, LLC's Motion for Order Directing Payment of Administrative Rent (D.E.# 85), the total sum of $78,929.94 was due to the Landlord for post-petition rent through October 1, 2008.

37. On November 1, 2008, November rent for the Premises, in the amount of $32,885.92 became due and payable to Landlord.

38. On or about October 29, 2008, the Trustee made a $2,500.00 on account payment to the Landlord to be applied against the outstanding post-petition rent.

39. Accordingly, the Court finds that the total amount necessary to cure the monetary default to the Landlord, a prerequisite to the assumption and assignment of the Lease, is $177,500.00 (the "Total Rent Due").

40. The Prospective Buyer has been given a copy of the Lease, and has had a reasonable opportunity to review the Lease and the Premises.

41. The Trustee and the Prospective Buyer (collectively, the "Parties") represent, warrant, and agree that no promise, warranty, representation, inducement or agreement, written or oral, not expressed or referred to in this Sale Order, has been made and/or relied upon in connection with the transaction subject of this Sale Order.

42. The Parties mutually represent, warrant, acknowledge and agree that (i) they have full power and authority to effectuate the terms and provisions of this Sale Order, (ii) each of the Parties has read, fully understands, and agrees to the relief authorized by this Sale Order; (iii) each of the Parties has had the benefit of the advice of counsel, and has entered into the transaction authorized by this Sale Order only after due consideration and consultation with its respective attorneys; (iv) each of the Parties has participated fully in negotiating and drafting the terms of this Sale Order; and (v) each of the Parties has entered into the transaction authorized by this Sale Order freely, voluntarily, without duress, coercion or fraudulent inducement, and for valuable consideration.

43. Accordingly, the Court finds that the terms of this Sale Order shall not be more strictly construed against either of the Parties than against the other.

**NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED THAT:**

44. The Trustee is authorized to sell all of the Estate's right, title and interest in all of the Debtor's tangible and intangible property located at the Premises as of the Sale Hearing and not specifically excluded in this Sale Order, including but not limited to (i) any remaining Equipment and Inventory, (ii) the Debtor's trade name, (iii) any trademarks of the Debtor, and (iv) any goodwill of the Debtor (collectively, the "Assets") to the Prospective Buyer, free and clear of all liens, claims and encumbrances, for the total sum of $315,000.00 (the "Purchase Price").

45. The Trustee is authorized to assume the Lease, and assign the Lease to the Prospective Buyer.

46. Upon entry of this Order, the Trustee and the Bankruptcy Estate are relieved of any obligations under the Lease.

47. The Trustee is authorized to transfer the Estate's right, title and interest in the Vehicle to the Prospective Buyer, subject to FMCC's lien.

48. The Prospective Buyer shall pay the Trustee an additional Two Hundred Forty Thousand and 00/100 Dollars ($240,000.00), in clear funds (the "Remaining Payment"), at the conclusion of the Sale Hearing.

49. Upon receipt of the Remaining Payment, the Trustee is authorized to deliver the keys to the Premises to the Prospective Buyer.

50. The Prospective Buyer is responsible for payment of all post-petition Florida Power & Light (FP & L) bills, in the approximate amount of $20,000.00.

51. The Prospective Buyer is directed to open new accounts with any and all utility companies, including but not limited to (i) FP & L, (ii) the Miami–Dade County Water & Sewer Dept.("MDCW & S"), and (iii) Bellsouth (collectively, the "Utility Companies"). In addition, the Prospective Buyer is directed to deliver new security deposits to any parties currently holding security deposits of the Debtor, including but not limited to the Utility Companies and the Landlord, within five (5) days of entry of this Sale Order, so that the Trustee may obtain the return of monies currently on deposit with said entities, to be retained for the benefit of the Estate.

52. The following assets are property of the Bankruptcy Estate and shall not be transferred to the Prospective Buyer on account of this Sale Order or the transaction authorized herein: (i) the Scheduled BOA Account, (ii) the Debtor's DIP operating account at Bank of America, (iii) the Debtor's DIP payroll account at Bank of America, (iv) the Trustee in Possession Account at Bank of America, (v) the Landlord Deposit, (vi) any deposits held by any third parties which are due to the Debtor as of the Sale Hearing, including but not limited to any security deposits held by the Utility Companies, (vii) any funds, including credit card receivables and accounts receivable, received or due to the Debtor as of the Sale Hearing, whether as a result of sales generated through operations or otherwise, (viii) any claims of any type that may be asserted by the Debtor and that exist as of the Sale Hearing, including but not limited to (i) any claims against the Landlord or MDCW & S for overpayment of water charges, and (ii) any claims against any and all third parties, including but not limited to the Debtor's insiders.

53. The Prospective Buyer shall be responsible for the payment of any and all taxes and fees associated with the sale and transfer of the Estate's right, title and interest in the Assets, including but not limited to any transfer fees, and sales tax.

54. The Trustee is hereby authorized to execute any and all documents he deems reasonable and necessary to consummate the transaction authorized by this Sale Order, and transfer of the Estate's right, title and interest in the Assets and the Lease to the Prospective Buyer.

55. The Trustee is authorized to pay the Total Rent Due to the Landlord from the sale proceeds, without further order of this Court.

56. The Prospective Buyer is directed to pay to the Trustee the remainder of the Landlord Security Deposit, in the sum of $51,199.12, as follows: ten (10) $5,000.00 consecutive, monthly payments beginning on December 1, 2008, and due on the 1st day of each month thereafter until paid in full. Each payment shall be made payable to Joel L. Tabas, Trustee, and delivered to his counsel, Scott N. Brown, Tabas, Freedman, Soloff & Miller P.A., 25 S.E. 2nd Ave. # 919 Miami, FL, 33131–1538. The Prospective Buyers and any assign shall be individually, and jointly and severally liable for said payments.

57. The Utility Companies are directed to refund to the Trustee any security deposits in their possession within five (5) days of entry of this Order.

58. After receipt by the Trustee of the Remaining Payment, the Trustee is authorized to make the following payments after review and establishment by the Trustee that the security interests of the parties listed below are properly perfected and valid:

A. payment of $50,000.00 to CAC in full and final satisfaction of any and all liens it may possess against the Debtor's assets, including but not limited to the lien subject of the CAC UCC, and any claims it

may possess against the Bankruptcy Estate;

B. payment of $47,500.00 to VB in full and final satisfaction of any and all liens it may possess against the Debtor's assets, including but not limited to the lien subject of the VB UCC, and any claims it may possess against the Bankruptcy Estate;

C. payment of $14,732.20 to IGT in full and final satisfaction of any and all liens it may possess against the Debtor's assets, including but not limited to the lien subject of the IGT UCC, and any claims it may possess against the Bankruptcy Estate.

59. **The (i) sale of the Estate's right, title and interest in the Assets, and (ii) assignment of the Estate's right, title and interest in the Lease, and (iii) the condition of the Premises, is "AS IS / WHERE IS," without representations or warranties of any nature by the Trustee.**

60. The Court finds good cause to deem the Prospective Buyer a good faith purchaser pursuant to 11 U.S.C. § 363(m).

61. Consummation of the transaction authorized by this Sale Order, does not and will not give rise to any claims by any party, including but not limited to the Prospective Buyer or successful bidder, of any kind or nature whatsoever against the Trustee, his agents, attorneys and/or other representatives, under the laws of the United States, or any state, territory or possession thereof, arising from or related to the transaction subject of this Sale Order, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising.

62. This Sale Order represents the entire understanding and agreement between the Parties, and supersedes any and all other agreements, either oral or in writing, between the Parties with respect to the subject matter addressed herein.

63. The Parties are directed to further cooperate, with each other as may be reasonably necessary to effectuate the relief authorized by this Sale Order.

64. If any person or entity that has filed and/or recorded financing statements or other documents or agreements evidencing liens on or interests in the Assets shall not have delivered to the Trustee, within five (5) days of entry of his Order, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all liens or other interests that the person or entity has with respect to the Assets, the Trustee, whether acting in his capacity as Chapter 11 Trustee or his capacity as Chapter 7 Trustee, is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets.

65. The Court finds good cause to waive the ten (10) day stay period pursuant to Bankruptcy Rule 6004(h), and deems this Order effective immediately.

66. The Court retains jurisdiction to: (a) enforce and implement the terms and provisions of this Sale Order; (b) resolve any disputes, controversies or claims arising out of or relating to this Sale Order; and (c) interpret, implement and enforce the provisions of this Sale Order.